Thank you. Good morning, and may it please the court. My name is Jonathan Goldstein, counsel for Plaintiff Leticia Barron. At this time, I would like to reserve three minutes for rebuttal. This case is about credibility. The trial below featured two plain errors that prejudicially affected how the jury weighed the credibility of key conflicting testimonies. The first error, and the most critical one for reversal, is the trial judge's comment. Now, key to understanding this case is to understand that Officer Aggie justified his use of force by claiming that Mr. Barron was directly facing him with his arms extended in a fixed shooting stance. Now, in order to rebut this assertion, plaintiff had to rely on the testimony of expert witness Jeffrey Boxer. This was the case because Officer Aggie was the only recipient witness to the shooting. He hadn't been given a body camera. The camera on the patrol car issued to Officers Townley and Gerber, who were behind him on the freeway conducting a traffic break, had stopped working about an hour beforehand. And because the shooting occurred on the side of the freeway, there were no pedestrian witnesses. Now, in the middle of Plaintiff Trial Counsel's redirect examination of Mr. Boxer, the trial court interjected to tell the jury, quote, in determining how much credibility to give a witness's testimony, you're entitled to consider the manner in which the witness is testifying. So what prompted that comment? Well, so Mr. Boxer had attempted to show the jury a photograph that had not yet been admitted into evidence. And after Mr. Boxer had attempted to do so, Plaintiff's Trial Counsel told him not to do so. And Mr. Boxer indicated, you know, sorry, I understand and indicated that he understood. And at that point, Plaintiff's Trial Counsel was beginning to conduct his examination. It was at that point that the trial judge interjected to tell the jury, essentially, focus on Mr. Boxer's demeanor. And the clear context of that statement was indicating to the jury that the trial judge did not find Mr. Boxer's testimony particularly credible. Now, that was an error. Because this court's cases and the cases from the Supreme Court make it very clear that although federal trial judges do have some discretion to comment on the evidence, if they do so, they must do so in a fair and even-handed manner and not in a one-side manner. And they must also, at the same time, make it clear to the jury that the ultimate issue of fact is for their determination and that they can ignore the opinion of the trial court. The trial judge did not do either of those things. Counsel, let me interject here real quick. Because Mr. Gallippo is one of the very best plaintiff's lawyers in Southern California. He has argued before this court many times. And he's won a lot of very big cases. He knows how to operate in a courtroom. He did not seem to have a problem with how the district court judge handled this. In fact, he seemed to express some frustration, much like the trial court judge did, about Mr. Boxer not following instructions. So, when we read that in the transcript, if Mr. Gallippo, of all people, did not think this was worth objecting to or a problem, why should we find that this is plain error requiring reversal? Well, two responses you are. First of all, when Mr. Gallippo said, thank you, that's best interpreted as a courtesy to the trial court. Mr. Gallippo's effort at that point was to continue the examination and win at trial. The second point is that I believe at the end of one of the days of the testimony, when the jury wasn't present, Mr. Gallippo said to the judge about a different issue, perhaps I should have been objecting more with regard to the introduction of certain testimony. So, there is an indication that, in hindsight, Mr. Gallippo may have wished he would have objected. And at the time that the comment occurred, again, his focus was to continue the examination. So, it's possible, I understand that Mr. Gallippo was quite experienced, but even experienced counsel miss something or make a mistake. So, the other thing that's really critical is to, you know, on its face, this comment may seem more anodyne, but the context makes it clear that the trial court was referring to Mr. Box. And some of the key evidence of that is if you look at the closing argument at page 900 and 901 of the defense trial counsel, he summarizes the trial court's comment as, quote, the court on its own instructed you that in assessing Mr. Box's credibility, you can consider his demeanor on the stand. So, it was clear to trial counsel for the defense at trial that the trial judge's comment was directly referencing Mr. Box. And if it was clear to defense counsel at trial, it was certainly something clear to the jury. And when trial counsel made this comment, the judge didn't interject to correct trial counsel's statement. So, the clear message to the jury is pay attention to Mr. Box's demeanor, something about it that is less credible. Also, to address your question, Judge Owens, it's not so much that the trial court couldn't take some action to make sure that Mr. Boxer was testifying within the proper bounds. But what he should have said was, Mr. Boxer, please do not show photographs or other things that have not been admitted into evidence. The trial judge later did exactly that. On page 702, when defendant's expert, Greg Meyer, was testifying, he was asked about an opinion that he gave as part of his expert report. And he began to read from the opinion. The trial court interjected to basically tell – sorry, I may have given an incorrect page citation for that. It is actually on page two – sorry, different page. But the trial court interjected to say, sir, don't read from your exhibit report. Counsel is asking you what your opinion is. So, the trial court had other options to control the testimony, but it didn't have to indicate to the jury that they should pay particular attention to Mr. Boxer's demeanor. Now, this error was a plain error because it has been well established by the Supreme Court and this court, as I stated previously, that trial judge's comments have to be fair and balanced. And it's clear that this comment wasn't. Now, this error was also prejudicial – Wait a minute. Fair and balanced. I'm not sure it's balanced in the sense that the trial judge did not say that as to other witnesses on the other side. Was it an unfair comment, meaning the jury does get to do this and the witness was disobeying instructions? Yes, Your Honor. So, the trial judge gave part of the general model jury instruction about credibility. There are eight factors listed in that model jury instruction about how a jury is supposed to evaluate the testimony of a witness, and their demeanor is only one of them. So, it's focusing the jury on one aspect of Mr. Boxer's testimony, which is admittedly not ideal. And as a result, even though it uses some aspects of a model jury instruction, the clear import is his demeanor isn't – it's nothing to consider in discounting his testimony, and jury, you should pay particular attention to that. It's pretty clear the judge was irritated and made his irritation known by that comment. Sure, sure. Yeah, absolutely. And this error was prejudicial because this was a very close case. As I stated previously, this was a credibility contest between Officer Aggie's version of events and Jeffrey Boxer's version of events. If the jury accepted Mr. Boxer's version of events, then Mr. Barone was not directly facing the officer with his arms in the shooting stance and therefore not posing a direct threat of harm to him that would justify deadly force. And Mr. Boxer was testifying that Mr. Barone had his back to the officer? Not that he had his back to the officer, but he was turned to the side, essentially, and he wasn't directly facing him. So, why doesn't the ballistic evidence, in terms of entry, direction of the bullet, and so on, why does that not conclusively answer the question? Well, it doesn't. So, it indicates that Mr. Barone was somewhere in front of Officer Aggie, but to the side of him. That was what Mr. Boxer's testimony was with regard to the angle of the entry wound. So, if the jury were to accept that testimony, which is also corroborated by the testimony of the medical examiner, Dr. Kim, who described the bullet wound on page 625 as front to back. So, Mr. Barone was in front of, or somewhere in front of Officer Aggie. That's never been disputed. Straight, which she clarified meant that the trajectory of the bullet was flat rather than ascending or descending, and slightly left to right. So, that indicates the bullet came from the left side to the right side. So, that's consistent with Mr. Boxer stating that Mr. Barone was not directly facing the officer. And, it's true that defendants expert Rocky Edwards testified that one possibility is that Mr. Barone could have been turning his head at the moment, but Mr. Boxer's opinion based upon that is that he wasn't directly facing the officer. So, not only was this error prejudicial, but it impaired the fairness, the integrity, and the public reputation of these proceedings. It impaired the fairness because when an individual like a plaintiff comes to federal court when their son has been killed at the hands of a law enforcement officer, they're entitled to and they expect a fair trial where the jury is going to make independent determinations about the facts and about the witnesses. And, the individuals expect that the trial judge is not going to interfere with the jury's determination of that fact, not going to indicate to the jury that certain evidence that supports one result is more important than other evidence. And so, what the trial judge's comment did here is to interfere with that. It both creates an unfair trial and it creates the perception that an individual like a plaintiff who has lost their son isn't going to get a fair shake in court. That is the essence of our judiciary is that when people come into court they get a fair shake and the juries get to decide things. So, this error was not only prejudicial, but it did affect, it was the kind of error that this court should exercise its discretion to correct. Unless the court has questions on the first argument, I will transition to the second argument. The second error that occurred here was that in closing argument, defense counsel improperly vouched for the credibility of Officer Atkins by stating that the events of the shooting were something he would, quote, never forget and were seared in his mind and seared in his memory. Now, it's well established. But there's no vouching in the sense of, and I believe him. He just said this is, the nature of this evidence is such that it would have been seared upon his memory. It's not explicitly a statement that I believe him. But the point of the statement is he, it's essentially saying to the jury, Officer Aggie's testimony is credible because he has this image of the shooting seared in his mind. And from that image, he is testifying. Therefore, you should believe. What this court made clear in Draper versus Rosario is that there are two kinds of improper vouching. One, there is when counsel expressly says, you know, I can, trust me, the witness is telling the truth, or they're going to suffer repercussions if they're not telling the truth, which is a way of saying, you know, I know something you don't, and believe me, they're truthful. And the second, which has the same ultimate conclusion, ultimate message, is there's evidence outside the record that you weren't presented. That evidence is known to me. And because of that, I believe that this witness is being truthful. And you should believe that this witness is being truthful as well. That's what occurred here. Counsel is saying, there's this extra evidence that makes me convinced that he really does remember this perfectly. And therefore, he's telling the truth. And you should rely on me in reaching that conclusion as well. So this error was also a plain error, because it's been well established in this court in Draper versus Rosario, which occurred, which is decided two years before the trial, expressly made clear what prior cases have indicated, but hadn't been as clear about, which is that in civil cases, improper vouching based upon evidence outside the record is improper. Now, it's true that the cases that plaintiff decided are not exactly factually perfectly on point. But nonetheless, the court statement in Draper was a very clear statement of what is allowed. And vouching, by necessity, depends upon the context of the trial, what evidence is being alluded to. And since improper vouching can be improper based upon evidence outside the record, what evidence is referred to outside the record necessarily is going to change. You may wish to have a look at your clock here. Your time is running down. Do you want to save some time? I think, aside from the three minutes, I'll just address the prejudice point, which I think is the most important thing. Again, this was a credibility contest between plaintiff's version of events as expressed by Mr. Boxer and Officer Aggie's testimony. And as a result, if the jury believed Officer Aggie, it necessarily had to discount Mr. Boxer and vice versa. And as a result, the way to view the interplay between these two witnesses' testimony is that of a scale. So if counsel vouches for and increases the value of Officer Aggie's testimony, it necessarily impairs the value of Mr. Boxer's testimony. And when a case like this where the evidence is close and the issues are hotly disputed, even a little bit of extra evidence that goes to the heart of the issue can have an effect on the ultimate outcome. And as a result, my submission is that this court cannot say that the results would have been the same without the improper vouching or without the trial judge's improper comment. And for that reason, this court should reverse and remand for a new trial. Okay, thank you. Mr. Brown. Good morning. May it please the court, Mark Brown for Appellee State of California and California Highway Patrol Officer Daniel Aggie. I just want to correct one statement made by counsel. Officer Aggie did not testify that Mr. Barron was directly facing him. He testified that Mr. Barron was moving from Officer Aggie's left to Officer Aggie's right, trying to flank him. That's at 2 ER 155 to 156 and also 218. Appellant has not met her burden of establishing error, plain or obvious error, or that either alleged error affected the outcome of the case and warrants reversing the jury's verdict. The trial judge did not abuse his discretion in issuing a one-sentence jury instruction on witness credibility. The judge's instruction did not distort or add to the evidence or offer an opinion on the evidence. The court's instruction... Oh, you know, I have to say that the impact of that is clearly to offer an opinion. If you're the jury and you hear the judge admonish the witness in that fashion and say to the jury, considering his demeanor, the message is very clear. Well... You have to be a juror who does not understand much to think that the judge said, this is a believable witness or whatever it is. No, the judge said, I'm suspicious of this witness and you should be too. I mean, that was the import of the statement. Well, and the judge has the discretion to comment on the evidence or to... That may be true, but you said it was neutral. I don't think it was. Well, the language of the instruction is neutral. I mean, the judge isn't offering an opinion. He's just saying, ladies and gentlemen, as I have instructed you, in determining how much credibility to give a witness's testimony, you're entitled to consider the manner in which the witness is testifying. But Mr. Brown, I mean, the timing of it, I think, matters. I mean, you can always say, if someone testifies and the judge says, well, you can believe the witness, but you don't have to, right after the witness testifies, and it hasn't said that after any other witness, then I would really demean it. It's a shot at him. But I think maybe your strongest... Your stronger argument here, Mr. Brown, is, you know, sometimes a trial judge has to say something, and when the witness is behaving the way that this witness apparently was behaving, there is some discretion here for the judge to say something, and there was no objection, if I recall correctly. So I think that might be where you want to go here. Well, and you're correct. There was no objection, no request for a curative instruction. And it wasn't just simply that Mr. Boxer was, you know, displayed an exhibit to the jury after being specifically instructed not to. It was his... Throughout his testimony, he was providing evasive, non-responsive answers. And, you know, Mr. Boxer was not an experienced expert witness, but he still has to, you know, he still has to answer questions, and he can't simply, you know, say whatever he wants in response to any question. You know, Appellant, again, argues that no other witness received a similar comment. However, no other witness testified in the manner that Mr. Boxer did. He repeatedly provided non-responsive, evasive answers, provided answers that went well beyond the scope of any question pending, and then after being specifically instructed not to show an exhibit to the jury, he showed an exhibit to the jury. And, again, Appellant did not object to the instruction nor ask for a curative instruction. Trial counsel's statement in closing referencing the court's instruction was not improper. It was just one comment in a series of arguments regarding Mr. Boxer's testimony. Mr. Boxer was not a key witness, and his testimony was never the tipping point on this trial. In addition to his lack of qualifications, which are staggering, Mr. Boxer's testimony was not credible, and his opinions ignored undisputed physical evidence. First, a red X with a circle around it was found on the concrete sidewalk near the shooting site. The circle was two feet in diameter and an inch and a half to two inches wide. DNA testing established that the X with the circle around it was made with Mr. Barron's blood. The coroner, Dr. Kim, and forensic specialist Rocky Edwards both testified that the gaping wound on Mr. Barron's left wrist could have been created by Mr. Barron cutting his wrist and then rubbing his wrist on the concrete to form the X and then the circle around it. This explains two things. It explains why the wound was open and gaping, because he rubbed it on the concrete, and it also explains how the X with the circle around it was created with Mr. Barron's blood. This was the only explanation at trial that explains how the X with the circle around it was created with Mr. Barron's blood. Neither Mr. Boxer nor appellant ever offered any explanation as to how the X with the circle around it was made from Mr. Barron's blood, and it defeats Mr. Boxer's opinion that the gaping injury was a gunshot wound. Second, Mr. Boxer admitted that there were other wounds on Mr. Barron's left arm in the immediate vicinity of the purported gunshot wound, and he admitted that these other wounds were caused by a sharp instrument. That's at 4 ER 529 to 536. When asked if it was coincidental that there were wounds caused by a sharp instrument in the immediate vicinity of the area he claims was a gunshot wound, Mr. Boxer requested that the word coincidental be defined. That's 4 ER 532. The coroner, Dr. Kim, testified that these marks were hesitation marks, and hesitation marks are caused when someone cuts themselves in an attempt to injure themselves or commit suicide, but then fails to follow through. Neither Mr. Boxer nor appellant ever addressed this issue. Third, Rocky Edwards testified that the bullet would not curve around Mr. Barron's wrist. Again, this was an issue that Mr. Boxer never addressed. Fourth, the coroner, Dr. Kim, firefighter Daniel Teitel, Orange County forensic scientist Jamie Miller, all independent witnesses, and appellee's expert Rocky Edwards all testified that the gaping wound on the left wrist was not a gunshot wound but was caused by a knife or other sharp instrument. On page 11 of her reply brief, appellant states, defendants failed to mention that the firefighter administering treatment at the scene assessed injury as a gunshot wound, and the EMT on the scene reported Mr. Barron suffered a gunshot wound to his arm. Appellant's statement misrepresents firefighter Teitel and EMT Molinar's testimony and is misleading. Firefighter Teitel testified that when he arrived on the scene, there was blood, it was dark, time was of the essence, and the head wound was his primary focus. He further testified that he did not examine the arm wound closely and initially assumed that the arm wound was caused by a gunshot wound because the head wound was caused by a gunshot. However, after examining the arm wound without blood, firefighter Teitel determined that it was a wound caused by a knife or sharp object and not a gunshot wound. That's at 3 ER 273 to 275. Appellant also misstates EMT Molinar's testimony. Ms. Molinar's deposition testimony was read at trial. At deposition, Ms. Molinar testified she did not observe any gunshot wound or any other injury to the wrist. At trial, Ms. Molinar testified she does not remember seeing a gunshot wound to the left arm. She also assumed that because the wound to the head was caused by a gunshot, the wound to the left arm was caused by a gunshot. Ms. Molinar further testified that she's not qualified to differentiate between a gunshot or a knife wound, and she would defer to a medical doctor on that issue. Mr. Boxer was the only witness to testify that the gaping wound was a gunshot wound, and his testimony was not credible. With respect to the improper vouching argument, attorneys have wide latitude to fashion closing arguments as long as they can make reasonable inferences based on the evidence. The mere descriptive statement that the event was seared in Officer Agee's memory was not vouching, but remarking on the intensity of the experience, which was an undeniably traumatic experience. Officer Agee testified that it was a traumatic event. That's at 2 ER 169. As discussed in Appelli's brief, Officer Agee testified regarding the events leading up to and including the shooting in detail. If you review all of Officer Agee's testimony, and it comprises 137 pages, it is clear that he remembers the shooting. Officer Agee also demonstrated for the jury the speed and manner in which Mr. Barron approached him, and how loudly he gave commands to Mr. Barron to stop. That's at 2 ER 212 and 220. There is no reason to believe that the trial court statement that the event was seared in Officer Agee's memory would have prevented the jury from assessing Officer Agee's testimony. In a reply brief, appellate lists bullet points of testimony suggesting that Officer Agee does not remember the incident. Many of these items relate to details, or they distort Officer Agee's testimony. They do not establish that Officer Agee does not remember the incident. For example, appellate states that Officer Agee could not remember if Mr. Barron was on the right lane or on the shoulder when he first encountered him. Officer Agee testified that he stopped his motorcycle approximately 45 feet from Mr. Barron, it was dark, and Mr. Barron immediately began advancing on Officer Agee, threatening to shoot and kill him. He then assumed a shooting stance. Officer Agee gave commands to stop, and he sought cover behind his motorcycle. Approximately 10 seconds lapsed from the time Mr. Barron threatened to shoot Officer Agee until shots were fired. Officer Agee's attention was focused on the individual advancing on him and threatening to kill him, not on whether Mr. Barron was standing in the slow lane or on the shoulder. This does not establish that Officer Agee does not remember the incident. Appellate states that Officer Agee was not sure whether Mr. Barron's hands were together or not when Mr. Barron locked his arms and assumed a shooting stance. Officer Agee testified about this in detail. Officer Agee testified it was dark and that he could not see if Mr. Barron's hands were together or an inch apart. That's at 2 ER 244. Again, this does not establish that Officer Agee does not remember the incident. Appellate states Officer Agee was unsure how much time passed between when Mr. Barron last spoke to him and when Officer Agee fired his shots. Officer Agee testified he does not remember the exact number of seconds. For example, was it 3 or 4? He couldn't differentiate that. But he testified in detail what was said by Mr. Barron and what he said to Mr. Barron. That's at 2 ER 258. Again, this does not establish that Officer Agee does not remember the incident. This was not a close case. There was no confident, compelling evidence that contradicted Officer Agee's testimony regarding the shooting. Family members and friends testified that Mr. Barron was acting erratically and his mental health was deteriorating in the days before his death. Mr. Barron was delusional, paranoid, and schizophrenic. He believed the Mexican cartel was out to kill him and his friends. Approximately 8 hours before the shooting, Mr. Barron threatened a lifelong friend at knife point and then carjacked his vehicle. Mr. Barron twice tried to commit suicide on the day of the shooting. Mr. Barron cut his wrist and then drew the X with the circle around it in his blood on the concrete sidewalk. Minutes before the shooting, two motorists observed Mr. Barron in traffic on the freeway without making any effort to avoid being struck. That's at 5 ER 766-769 and 772-777. This testimony explains Mr. Barron's conduct and it corroborates Officer Agee's testimony. The physical evidence also supports Officer Agee's testimony, including the wounds to Mr. Barron's wrist and the X with the circle around it. Officer Townley testified that within minutes of the shooting, Officer Agee told him that Mr. Barron was advancing on him, said he had a gun, and was going to kill him. That's at 2 ER 329. In our opening brief, appellant states that Officer Agee did not tell Sergeant Hopkins that Mr. Barron threatened to shoot him. However, appellant fails to inform the court that Sergeant Hopkins did not ask any questions regarding the shooting and actually directed Officer Agee not to say anything until union representatives arrived. That's at 2 ER 225-226. Appellant repeatedly misstates and mischaracterizes the evidence in the trial proceedings. Appellant argues on page 8 of her reply brief that this was a close case because Officer Agee should have employed de-escalation training. The issue of de-escalation training was discussed extensively at trial by the experts and Officer Agee. In order for de-escalation to occur, you need two things. You need time and you need cooperation from the other party. As already discussed, Officer Agee did not have the time, nor did he receive the cooperation from Mr. Barron to de-escalate the situation. Appellants also argue this was a close case because Mr. Barron was unarmed. Again, this issue was extensively discussed at trial among the experts and Officer Agee. Mr. Barron told Officer Agee that he had a gun, tended to shoot and kill him. He approached rapidly on Officer Agee, failed to comply with his commands to stop, and then assumed a shooting stance. Under the totality of the circumstances, Officer Agee reasonably believed that Mr. Barron intended to shoot and kill him. This was not a close case. Appellant has not met her burden of establishing error, plain or obvious error, or that either alleged error affected the outcome of the case and warrants reversing the jury's verdict. Okay. Mr. Goldstein, you used all of your time. Let's put a minute on the clock so you can respond. Okay. Thank you, Your Honor. A few points on rebuttal. First, at record 142 to 143, what Officer Agee testified is that Mr. Barron's left pectoral muscle was facing towards him when the shooting occurred. So even according to Officer Agee, it's unclear exactly at the moment that Mr. Barron would have been directed to shoot. He was directly facing him, but that's clearly what the import of his testimony was, especially since Officer Agee testified that Mr. Barron had his arms extended in a shooting stance. I'd also point out that Rocky Edwards' testimony as to the wound on Mr. Barron's left arm just repeated the testimony of Dr. Kim as he admitted that he relied entirely on her autopsy report, and he also testified that unless a microscopic evaluation of Mr. Barron's arm was done, which it wasn't done in this case, there's no way to tell for sure if a wound was caused in part by the graze wound from a bullet or purely by a sharp object. So the evidence was closer, and this case should be reversed. Thank you. Thank you. Thank both sides for their helpful argument. Mr. Goldstein, I think you're taking this case as part of our pro bono program. Is that correct? That is correct. I'd like to thank you on behalf of the court for doing this. As I expect both counsel know, we do have this program in which we ask people to take certain cases and do them pro bono, and we're always immensely grateful for the help that you provide the court. And thank you very much, Mr. Goldstein, for your helpful argument. I will say the same thing to you, Mr. Brown, except you're being paid. But I want to compliment both lawyers and thank both lawyers for your appearance this year. The case of Barron v. State of California now submitted.
judges: FLETCHER, RAWLINSON, OWENS